IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No.  03-815 |
| | ) |
| VARIOUS ACCOUNTS IN THE NAMES | ) (Consolidated Actions) |
| OF JON R. ROGERS, PETER T. MOWAD, | ) |
| JOHN A. THORNE AND DRAYCOTT | ) |
| MANAGEMENT SERVICES, INC., | ) |
| | ) |
| Defendants. | ) |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No.  03-1157 |
| | ) |
| $1,660,800.00 IN UNITED STATES | ) |
| CURRENCY, $122,400.00 IN ONE | ) |
| OUNCE GOLD COINS, and ONE 100 | ) |
| OUNCE SILVER BLOCK, | ) |
| | ) |
| Defendants. | ) |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No.  04-353 |
| | ) |
| VARIOUS ACCOUNTS IN THE NAMES | ) |
| OF CARIB INTERNATIONAL LTD., | ) |
| FULTON DATA PROCESSING LTD., | ) |
| DATA-TECH 2000 LTD., WORLD | ) |
| LUBRICANTS, LTD., WILLIAM J. CEASAR | ) |
| ENTERPRISES LTD., JON R. ROGERS, | ) |
| JOHN A. THORNE AND PETER T. MOWAD, | ) |
| | ) |
| Defendants. | ) |

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 04-838 |
| | ) |
| VARIOUS ACCOUNTS IN THE | ) |
| NAME OF JON R. ROGERS, | ) |
| | ) |
| Defendants. | ) |

**UNITED STATES OF AMERICA'S OPPOSITION TO PETITION TO REOPEN CASE**

On or around October 3, 2012, the United States filed a Motion for Judgment of Forfeiture at civil action 03-815.[1]  On or around October 9, 2012, Sandra Maria Cuello, claiming to be an "authorized representative" of Carib International LTD ("Claimant"), filed a Notice of Claim and Verified Statement of Interest at civil action 04-353.  On or around October 16, 2012, the Court granted the United States' Motion for Judgment of Forfeiture, and on November 16, 2012, the Claimant filed a Petition to Reopen the case.

For the reasons discussed more fully below, the Court should deny Claimant's petition to reopen, because the Claimant is over eight years late in filing a claim, the claim is deficient as a matter of law, and the Claimant already had ample opportunity to respond to the United States' Motion for Judgment.  Accordingly, the petition to reopen is moot and the United States is entitled to judgment.

---

[1] By Court Order on April 17, 2010, the four above-captioned civil actions were consolidated at civil action 03-815.

2

### A. Background

As the above case caption illustrates, the United States filed four civil forfeiture lawsuits against the assets of three individuals, Peter Mowad, Jon Rogers and John Thorne, and various corporate assets. As alleged in the Complaint at civil action 04-353, which is the case at issue in the instant motion and this opposition brief, the United States had affirmative evidence that all of the individuals had ownership and control over the corporate assets identified in 04-353. Over the course of years, the United States engaged in settlement discussions with the three individuals, which resulted in three separate settlements that the Court approved. The understanding of, and the representations to, the United States was that the individuals' assets would be partially forfeited according to the settlement agreements and that the individuals, as owners and/or controllers of the corporations, would forfeit all of the corporate assets to the United States. Indeed, the settlement agreements contain concise language in this regard. For example, the language in the Jon R. Rogers agreement, which was filed with the Court at 03-815, states,

> Other than the payment, delivery, and release to Jon R. Rogers, as described in the above paragraphs of this Stipulation, Jon R. Rogers releases without limitation all of his rights, titles and interests in, and consents to the forfeiture of, all of the remaining Defendant Properties in the Forfeiture Actions, other than the Jon R. Rogers Assets, including, without limitation, any and all corporate assets, which are the subject of Civil Action No. 04-353, which were seized from: (1) the Atlantic International Bank (Belize) and (2) the Provident Bank & Trust of Belize Ltd.

However, shortly after all three settlement agreements were signed and after the three individuals received almost all of their portions of the settlement, the Claimant filed a Notice of Claim and Verified Statement of Interest asserting that none of the individuals - Mowad, Rogers or Thorne -

had the authority to settle the case on behalf of the Claimant. As discussed in more detail below, the Claim is over 8 years late in being filed and, on its face, is legally deficient. Moreover, the Claim and subsequent petition to reopen case raise irrelevant and legally inaccurate arguments regarding forfeiture law and procedure. As such, the Court should deny the Claimant's petition to reopen and the forfeiture judgment should stand.

### B. The Claim is Extraordinarily Late in Being Filed and Should Be Denied as a Matter of Law.

After a civil forfeiture action is filed with the Court, service of the action is not governed by Rule 4 of the Federal Rules of Civil Procedures but, rather, civil forfeiture actions have their own "notice" requirements that are much less stringent than Rule 4. Specifically, the notice requirements are located in Rule G of the Supplemental Rules for Certain Admiralty and Maritime Claims and require simply that the United States provide notice and a copy of the complaint to any person who reasonably appears to be a potential claimant on the facts known to the government. The notice can be sent "by means reasonably calculated to reach potential claimants." Rule G(4)(b)(iii)(A). Importantly, if a claimant has actual notice of a forfeiture action, the claimant cannot contest an action by claiming the United States did not provide proper notice. Indeed, Rule G(4)(b)(v) states: "A potential claimant who had actual notice of a forfeiture action may not oppose or seek relief from forfeiture because of the government's failure to send the required notice."

Prior to Rule G being enacted, notice requirements for civil forfeiture actions were governed by Rule C of the Supplemental Rules for Certain Admiralty and Maritime Claims and case law regarding due process requirements. Rule C, however, was even less restrictive than

Rule G. Specifically, Rule C(4) requires notice only through publication in a newspaper having general circulation in the district. This Rule, however, did not circumvent due process requirements, and cases required more than mere publication. For example, in <u>Mullane v. Central Hanover Bank & Trust Co.</u>, 339 U.S. 306, 314-15 (1950), a leading case on notice, the Supreme Court held that "an elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections . . . the means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it."

In the instant case, Claimant's claim and subsequent Petition to Reopen relates solely to the corporate assets in civil action 04-353. Pursuant to a seizure warrant, the United States seized the corporate assets at issue on or around March 9, 2004. The United States filed the corresponding forfeiture complaint at 04-353 on or around March 9, 2004. On May 10, 2004, the United States served notice, through their attorneys, on Mowad, Rogers and Thorne. (Service Letters attached as Ex. A.) The notice included the forfeiture complaint and the warrant of arrest, which specifically instructed the recipient that they had thirty (30) days to file a Claim and another twenty (20) days to file an answer to the complaint.[2] (Warrant of Arrest attached as Ex. B.)

At the time of service, Mowad, Rogers and Thorne were the owners and controllers of Carib International, Ltd. Indeed, at the time of service, Mowad, Rogers and

---

[2] These deadlines are prescribed by the Civil Asset Forfeiture Reform Act. 18 U.S.C. § 983(a)(4).

Thorne all held Power of Attorney on behalf of Carib International Ltd. (Power of Attorney Forms attached as Ex. C.) The Power of Attorney granted each of them broad power and total control over the company. (Id.) Specifically, the Power of Attorney declared that each of them was designated as the company's "attorney and agent" with regard to "all affairs of the company" and that the company would consider "all acts and declaration of its attorney and agent as legally binding upon itself." (Id.) The designation lasted until at least July 7, 2004. (Id.) Moreover, Mowad, Rogers and Thorne were the owners of Carib International and, at a minimum, Mowad and Thorne were on the Board of Directors.[3] (Special Resolution of Carib International attached as Ex. D.) In fact, on August 30, 2001, Thorne completed a form for Atlantic International Bank Limited - one of Carib International's bank accounts that was seized in civil action 04-353 - in which he declared that he was the "owner" of Carib International Ltd. (Bank Form attached as Ex. E.) Moreover, when the bank account was opened at Provident Bank and Trust - the other bank account seized from Carib International - Rogers and Thorne held signature authority over, and had internet access to, the account. (Bank Documents attached as Ex F.)

There is no dispute whatsoever, that Mowad, Rogers and Thorne were all served with notice, the warrant of arrest and a copy of the complaint at 04-353. (Service letters Ex. A.) Each of their attorneys contacted the United States and began various discussions regarding the case. As such, there is also no dispute that Carib International was given proper notice, as Mowad, Rogers and Thorne were the owners and held Power of Attorney to act as "attorney and

---

[3]At the time relevant to this case, Carib International was a closely held company. Although the United States cannot currently locate documentation that indicates that Rogers held shares, the investigation revealed that Rogers was an owner. Indeed, as recently as December, 2012, Thorne, through his counsel, confirmed that Rogers was a shareholder at the time this case was filed.

agent" with regard to "all affairs of the company."  The law requires that the United States give notice that is reasonably calculated to reach a potential claimant.  By any measure, this standard is satisfied by giving direct notice to the owners, members of the Board of Directors and those who held Power of Attorney.

Moreover, the United States seized every dollar out of Carib International's two operating accounts, totaling approximately $1.7 million dollars.  Certainly, Carib International was put on notice the day of the seizures that the United States was attempting to forfeit their funds.  When the seizures are considered in conjunction with the direct notice to the owners, members of the Board of Directors and those who held Power of Attorney, there is no dispute that Carib International had notice of the forfeiture.

However, despite the seizures on or around March 9, 2004, and despite receiving direct notice in or around May, 2004, Carib International waited well over eight years, until October 9, 2012, to file a claim at 04-353.  The Civil Asset Forfeiture Reform Act ("CAFRA") 18 U.S.C. § 983(a)(4) states that "any person claiming an interest in the seized property may file a claim asserting such person's interest in the property . . . except that such claim may be filed not later than 30 days after the date of service of the Government's complaint."  Based on the plain reading of the statute, Carib International's claim is over eight years late in being filed.  Importantly, numerous courts, including this Court and the Third Circuit Court of Appeals, have stressed that claimants must strictly comply with the filing requirements.  In United States v. $487,825.00, 484 F.3d 662 (3d Cir. 2007) the Third Circuit addressed the importance of strict compliance.  In that case, the claimant filed an unverified "notice of claim and verified answer" approximately three months after his claim deadline passed.  Id. at 664.  In reviewing the law, the

Court stated, "to establish statutory standing in a forfeiture case, the claimant must comply with the procedural requirements set forth in Rule C(6)(a) and § 983(a)(4)(A)."[4]  Id.  "The **most significant requirement** is that the claimant **must timely file** a verified statement of interest." Id. (emphasis added.)  "Courts have repeatedly emphasized that forfeiture claimants must strictly adhere to the filing requirements to perfect standing." Id. at 665.  Ultimately, the Court held that the claimant did not strictly adhere to the filing requirements, and the Court affirmed the District Court's entry of judgment for the United States.

Likewise, in United States v. $102,535.00, filed at civil action number 08-1338 in the Western District of Pennsylvania, this Court recognized the significance and importance of strict compliance with the filing deadlines.  Indeed, in its Memorandum Order dated March 14, 2012, this Court stated that the requirement to file a timely claim "is no mere procedural technicality."  This Court ruled that a claimant failed to establish statutory standing, because her claim was ninety-seven (97) days late, and it was unverified.  The claimant filed an appeal, and the Third Circuit affirmed this Court on or around September 27, 2012.  See also United States v. $140,000.00, 2010 WL 1704966, (D.N.J. April 26, 2010) (holding that claim was deficient for multiple reasons, including being filed two days late).

In the instant case, Carib International's claim is over eight years late in being filed and, accordingly, the petition to reopen should be denied.  Furthermore, not only is the claim late as a matter of law, but it is late as a matter of equity.  The United States negotiated with the individuals over the course of years and in good faith.  As part of those agreements, the United

---

[4] As stated above, Supplemental Rule C to Certain Maritime and Admiralty Claims was the predecessor to Rule G.

States released significant funds to the individuals with the understanding that it was going to forfeit the corporate assets at 04-353. After all three settlement agreements were signed and approved by the Court, and after the United States paid all of the funds to Mowad and Rogers and most of the funds to Thorne, a woman by the name of Sandra Maria Cuello, claiming to be an authorized representative of Carib International, filed a claim. The United States is now put in the position of either attempting to void the three settlement agreements or litigating Cuello's untimely claim. Additionally, given the age of this case, evidence has become stale, witness memories have faded and most importantly, one of the key witnesses - Peter Mowad - is deceased. As such, the United States would be greatly prejudiced if the case is reopened. These are precisely the reasons why the statute, and the case law, require strict compliance with the filing requirements. For all of the reasons discussed above, the petition to reopen should be denied.

### C. The Claim is Invalid on Its Face

In filing a verified claim, Rule G(5) states the following: "The claim must: (A) identify the specific property claimed; (B) identify the claimant and state the claimant's interest in the property; (C) be signed by the claimant under penalty of perjury; and (D) be served on the government attorney." As discussed above, numerous courts, including the Third Circuit and this Court have required strict compliance with the requirements for filing a claim. See United States v. $487,825.00, 484 F.3d 662 (3d Cir. 2007) and United States v. $102,535.00 cited above. Among other things, "the verified statement must identify the claimant's interest in the property." United States v. $487,825.00 at 664. Moreover, "the danger of false claims in these proceedings is substantial, requiring courts to demand more than conclusory or hearsay allegations of 'interest'

in the forfeited property." United States v. $100,348.00, 354 F.3d 1110, 1118-19 (9th Cir. 2004); United States v. $39,557.00, 683 F. Supp.2d 335, 339 (D.N.J. 2010) (holding that claim is deficient because it failed to sufficiently identify the claimant's interest and only offered "a bald assertion of ownership").

       In the instant case, Claimant's claim is deficient for multiple reasons. As an initial matter, the Claimant alleges - in purely conclusory fashion - that Carib International has an "ownership interest" in the total amount of forfeited funds of $1,794,517.33. (Claim p. 1.) This bald claim is particularly troubling, because the funds were not seized solely from Carib International. Rather, the total amount of funds at issue ($1,794,517.33) was the combined amount seized from the bank accounts of three separate companies. Nevertheless, the Claimant does not offer any explanation as to why it has an "ownership interest" in other companies' funds. As such, this is precisely the type of conclusory and bald claim that fails as a matter of law.

       Moreover, the Claimant does not even attempt to explain its relationship or lack thereof with regard to Mowad, Rogers and Thorne. As discussed above, at the time the Complaint was filed and notice was given, the United States had affirmative evidence that these three were the owners of Carib International. Furthermore, all three held Power of Attorney over the company to act as "attorney and agent" with regard to "all affairs of the company." (Ex. C.) The facts regarding ownership and Power of Attorney were specifically alleged in the complaint at 04-353. At a minimum, the Claimant needs to explain - in more than conclusory fashion - its ownership interest in the assets. Again, the Claimant fails at even this simple requirement. Accordingly, the claim fails as a matter of law.

**D. Claimant's Citation to Authority is Inaccurate and is No Excuse for the Late and Deficient Claim**

In an attempt to excuse its extraordinarily late claim, the Claimant cites law that has no application to the instant case. For example, Claimant cites 21 U.S.C. § 853 on two occasions. However, this statute is titled "Criminal Forfeitures" and, as its name suggests, governs criminal forfeitures. The case at issue, civil action 04-353, is a civil forfeiture action and is governed by a completely separate set of rules. (See Rule G of the Supplemental Rules for Certain Admiralty and Maritime Claims.) Likewise, the Claimant cites Federal Rule of Criminal Procedure 32.2 for the proposition that the United States did not advertise correctly. Again, this is rule of criminal procedure that is titled "Criminal Forfeiture" and, as its name suggests, governs criminal forfeitures, not civil forfeitures. Indeed, Federal Rule of Criminal Procedure 1 specifically indicates that the Criminal Rules do not apply to civil forfeiture actions. Fed.R.Crim.Pro 1(a)(5)(B). As such the statute and Criminal Rule of Procedure cited by Claimant have no application to the instant case.

Not only did the Claimant cite the wrong rules, but she did not cite them correctly. For example, the Claimant argues that the United States did not advertise correctly, because it did not advertise on its forfeiture website. As an initial matter, when this case was filed, and when the advertising took place, the government's forfeiture website did not exist. The website only became operational in December, 2007. More importantly, however, Criminal Rule 32.2 does not mandate advertising on the government website. Rather, Rule 32.2 cross-references to Supplemental Rule G, which indicates that the website is merely one option that the government may use. Another option is "in a newspaper generally circulated in the district where the action

is filed. . . ." Rule G(4)(a)(iv). Regardless of where or how the United States advertised this action, it is undisputed that it served direct notice on Mowad, Rogers and Thorne, and all three of them were owners of, and held power of attorney over, Carib International. This direct notice, by any measure, satisfies the notice requirement to Carib International. Moreover, there is no need to quibble over advertising, because Rule G(4)(b)(v) specifically states that "a potential claimant who had actual notice of a forfeiture action may not oppose or seek relief from forfeiture because of the government's failure to send the required notice." In other words, as long as a claimant has notice, the claimant cannot try to oppose forfeiture based on a technicality. Accordingly, the Claimant's attempt to excuse its late claim by citing the wrong Rules and statutes must fail.

       Lastly, in its Petition to Reopen Case, the Claimant states that it did not have an adequate opportunity to file a response to the United States' Motion for Final Order of Forfeiture. (Petition ¶ 6.) This is simply not accurate. The United States filed its motion on October 3, 2012 at 03-815. On October 9, 2012, the Claimant filed a Notice of Claim at 04-353, wherein it specifically cited and opposed the United States' Motion for Final Order of Forfeiture. Even though it was filed at a different docket number, this document is the Claimant's opposition to the United States' Motion, and the United States has no objection to it being considered as such. Accordingly, the Claimant had an opportunity to respond, did in fact respond, and should not be given another opportunity.

**E. Conclusion**

For all of the foregoing reasons, the United States respectfully requests that the Court deny the Claimants Petition to Reopen Case.

Respectfully submitted,

DAVID J. HICKTON
United States Attorney

s/ Lee J. Karl
Assistant U.S. Attorney
700 Grant Street, Suite 4000
Pittsburgh, PA  15219
(412)894-7488
PA ID No. 87856

**CERTIFICATE OF SERVICE**

I hereby certify that the United States' Opposition to Petition to Reopen Case was served electronically on all counsel of record.

s/ Lee J. Karl
Assistant U.S. Attorney
700 Grant Street, Suite 4000
Pittsburgh, PA  15219
(412)894-7488
PA ID No. 87856
